IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| WARREN T. KITCHEN, | ) | |
| Plaintiff, | ) ) ) | CV-04-828-ST |
| v. | ) ) | OPINION AND ORDER |
| WSCO PETROLEUM CORP. dba TOAD'S, | ) ) ) | |
| Defendant. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

On February 16, 2005, plaintiff, Warren T. Kitchen ("Kitchen") filed a Third Amended

Complaint, alleging the following claims against defendant WSCO Petroleum Corp. ("WSCO"):

(1) retaliation for opposition to unlawful employment practices in violation of the Anti-

Retaliation Statute pursuant to Title VII of the Civil Rights Act of 1964, 42 USC § 2000e

*et seq.* ("First Claim");

(2) failure to pay overtime wages and reimbursements in violation of ORS 652.150 and

652.200 ("Second Claim");

1 - OPINION AND ORDER

(3) prejudgment interest ("Third Claim").

In its answer, WSCO raised nine affirmative defenses.

This court has jurisdiction over Kitchen's First Claim pursuant to 42 USC § 2000e. Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

WSCO has now filed a Motion for Summary Judgment (docket #40) against all claims on the basis of judicial estoppel. For the reasons that follow, the Motion for Summary Judgment is DENIED.

## **FACTS**

WSCO is an Oregon corporation that does business in the state of Oregon under the assumed name of WSCO Petroleum and Toad's. Kitchen commenced at-will employment with WSCO on or about September 23, 2002, and was terminated on or about December 31, 2002.

On August 29, 2003, Kitchen filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI"), alleging sexual harassment and retaliation against WSCO. Defendant's Ex. 1, p. 2. BOLI subsequently transferred the complaint to the Equal Employment Opportunities Commission ("EEOC") for investigation. *Id* at 1. On or about March 19, 2004, the EEOC issued its determination, stating that based on its investigation, it was "unable to conclude that the information obtained establishes violations of the statutes.". Defendant's Ex. 2, p. 1. Kitchen was provided with a 90-day right to sue notice. *Id.* His right to sue expired on or about June 14, 2004. *Id.*

On April 5, 2004, Kitchen filed a Voluntary Petition for a Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Oregon, Case No. 04-33230-rld13, together

with mandatory schedules of assets. Defendant's Ex. 3. In his schedule of assets, Kitchen did not disclose or list the claims for relief that Kitchen now alleges against WSCO in this action. *Id* at 6-7. Instead, Kitchen's claim against WSCO (misspelled as "Westco") was included on the schedule listing unsecured, non-priority creditor claims. *Id* at 14. Kitchen also failed to include his claims against WSCO on his Chapter 13 Plan (the "Plan"), which was filed simultaneously with his bankruptcy petition and later modified on or about May 28, 2004. Defendant's Ex. 4.

On May 11, 2004, at a "341a Meeting of Creditors," the Trustee asked Kitchen whether all his assets were listed on the schedules, and Kitchen responded "yeah." Defendant's Ex. 6, p. 3. No creditors were present at that meeting. *Id* at 2. The Trustee also asked Kitchen whether he had reviewed the documents signed by him and prepared by his attorney, and Kitchen again responded "yeah." *Id* at 4. The Trustee finally asked "Do you find them to be complete, true and accurate to the best of your knowledge?," and Kitchen answered "To the best of my knowledge, yeah." *Id.*

On June 10, 2004, Kitchen amended his bankruptcy schedules, but did not add his claims against WSCO. Defendant's Ex. 5, p. 3; Defendant's Ex. 7, p. 9. On August 30, 2004, the Bankruptcy Court issued an "Order Confirming Plan and Resolving Motions." Defendant's Ex. 8.

On or about July 5, 2005, WSCO's attorney confronted Kitchen's attorney with WSCO's intent to move for summary judgment on the basis of judicial estoppel relating to the bankruptcy filing. Affidavit of Amy S. Campbell, ¶ 2. On or about July 11, 2005, Kitchen amended his bankruptcy schedules to add his claims against WSCO, as well as a contract claim and malpractice claim against others that he had not previously disclosed. Defendant's Ex. 9, p. 3.

This amendment was filed with the bankruptcy court and served on the Chapter 13 and Trustee. Defendant's Ex. 12. Kitchen has never informed his creditors of his claims against WSCO. *Id.* Kitchen amended his schedules prior to WSCO's motion for summary judgment, which was filed on July 22, 2005.

On August 2, 2005, Kitchen and the Trustee entered into a stipulation to modify the plan "so that any non-exempt proceeds will be used to fund the plan and to pay claims. The parties anticipate that any such proceeds will increase payment to creditors." Plaintiff's Ex. C, p.2.

## DISCUSSION

WSCO argues that Kitchen has failed to meet his obligations as a debtor pursuant to the Bankruptcy Code by not listing his pre-petition claims against WSCO in his original bankruptcy filings, his subsequent testimony and amendments to his schedules and Chapter 13 Plan and by amending his schedules after being confronted with the threat of a motion for summary judgment. Therefore, WSCO believes Kitchen's claims are barred under the doctrine of judicial estoppel.

**I.     Legal Standard**

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F3d 778, 782 (9th Cir 2001), citing *Rissetto v. Plumbers & Steamfitters Local*, *343*, 94 F3d 597, 600-01 (9th Cir 1996) and *Russell v. Rolfs,* 893 F2d 1033, 1037 (9th Cir 1990), *cert denied*, 501 US 1260 (1991). It is not only limited to asserting inconsistent positions in the same litigation, but also is appropriate to bar litigants from making incompatible statements in two different cases. *Id* at 782-83.

Because it is intended to protect the integrity of the judicial process, judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell*, 893 F2d at 1037.

A court "may" consider three factors in determining whether to apply the doctrine of judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hamilton*, 270 F3d at 782-83, quoting *New Hampshire v. Maine,* 532 US 742 (2001) (internal quotations and citations omitted).

## II.   Analysis

A lawsuit based on events occurring prior to the filing of a bankruptcy petition is a claim existing as of the date the petition is filed; accordingly, the claim is property of the estate under 11 USC § 541(a)(1). *United States v. Whiting Pools*, 462 US 198, 205 n9 (1983). Kitchen's potential employment discrimination claim arose before he filed his bankruptcy petition, and yet he failed to list this claim as an asset on his schedules, although he was expressly required to do so by 11 USC § 521(1).

Judicial estoppel is designed "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton*, 270 F3d at 782, citing

*Russell,* 893 F2d at 1037. Application of judicial estoppel is appropriate to "prevent the *deliberate manipulation* of the courts." *Helfand v. Gerson*, 105 F3d 530, 536 (9th Cir 1997) (citation omitted, emphasis added). Accordingly, courts have judicially estopped parties that have taken inconsistent positions *calculated* to make a mockery of the judicial system. *Burnes v. Pemco Aeroplex, Inc.*, 291 F3d 1282, 1284 (11th Cir 2002) (citations omitted, emphasis added); *see also In re Coastal Plains*, 179 F3d 197, 206 (5th Cir 1999) ("many courts have imposed the additional requirement that the party to be estopped must have acted *intentionally,* not inadvertently" (citations omitted, emphasis added)); *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F2d 164, 175 (5th Cir 1973) (interpreting Texas law on judicial estoppel as "the rule looks toward *cold manipulation*") (emphasis added)).

However, when a party acts in good faith and the creditors have been adequately informed, no threat is posed to the "integrity of the bankruptcy system [which] depends on full and honest disclosure of debtors of all their assets." *Hamilton*, 270 F3d at 785, quoting *In re Coastal Plains*, 179 F3d at 208. Judicial estoppel does not apply "[i]f incompatible positions are based not on chicanery, *Johnson v. State, Oregon Dept. of Human Resources, Rehab. Div.*, 141 F3d 1361, 1369 (9th Cir 1998), or "when a party's prior position was based on inadvertence or mistake." *Helfand*, 105 F3d at 136. Mere inconsistency is not enough to permit a conclusion that a party has been playing fast and loose. *General Signal Corp. v. MCI Telecomm. Corp.*, 66 F3d 1500, 1505 (9th Cir 1995), *cert denied*, 516 US 1146 (1996).

The issue is whether Kitchen's failure to include his claim against WSCO on the original schedule of assets was deliberate, intentional and in bad faith, or was due to inadvertence or mistake. WSCO alleges that Kitchen is guilty of "coy shenanigans" because he had knowledge

of his pre-petition claims against WSCO at the time he filed for bankruptcy and yet failed to provide notice to the bankruptcy court, Trustee and creditors until he was confronted by WSCO of its intent to move for summary judgment.

This court finds that Kitchen did not act in bad faith. WSCO relies on an alleged inconsistency between Kitchen's deposition testimony (stating that he noticed some debts, including the WSCO claim, were missing from the schedules, asked his lawyer about them and was reassured that they could added later by amending the schedules), his oath at the creditors' meeting (certifying that the schedules are true and accurate to the best of his knowledge), and his declaration filed in opposition to the summary judgment motion. As discussed in this court's Opinion and Order on WSCO's Motion to Strike, Kitchen's deposition testimony is not inconsistent with his oath at the creditors' meeting or his declaration. When Kitchen noticed that some of his "debts" were not listed on his schedules, including his claim against WSCO, he became concerned and asked his bankruptcy attorney about it, who advised that the schedules could be amended later. Deposition of Kitchen, pp. 12, 16, 18, 66-67. Kitchen relied on that representation and believed that the documents complied with bankruptcy rules. *Id* at 9, 12, 27, 41, 58, 61. He found the bankruptcy proceeding totally confusing and did not understand the precise status of his BOLI complaint and how it was connected to the bankruptcy proceeding. Declaration of Kitchen, ¶ 3; Deposition of Kitchen, pp. 22-23, 27, 62-64. As a result, he answered all the questions under oath "truthfully to the best of [his] ability on [his] information, knowledge and belief. Declaration of Kitchen, ¶ 13. In hindsight, he could only assume "the materials . . . were misunderstood to result in the mischaracterization of the 'claim' in the manner which found its way to the Schedule F [creditors holding unsecured nonpriority claims,

Defendant's Ex. 3, p. 13]" and that "[a]ny mistakes that I . . . caused my lawyer to make have been the result of confusion surrounding the events and not b[y] any effort of mine to hide." *Id* at ¶¶ 4, 16. Kitchen did not realize that WSCO was listed in his original schedules, although on the wrong schedule, until the time of his deposition. In fact, the listing of WSCO on the original Schedule F, even if incorrect, corroborates Kitchen's assertion that he told his bankruptcy attorney about the claim against WSCO.

Furthermore, Kitchen cured any error promptly by amending his bankruptcy schedules just five days after learning about the error from WSCO's counsel. Defendant's Ex. 9, p. 3. Some courts outside this jurisdiction have found that amending is not enough to avoid judicial estoppel. In *Scoggins v. Arrow Trucking Co.*, 92 F Supp 1372 (SD Ga 2000), the court applied judicial estoppel where plaintiff did not inform the trustee or his creditors of the claim until the opposing party filed a summary judgment motion against him. However, plaintiff failed to provide any affidavit or other explanation for his failure to list the claim as an asset on the original schedules and offered no proof that he was in the process of moving to amend his bankruptcy filings to disclose the claim. *Id* at 1375-76. Kitchen has offered both an explanation of the error and actual proof that he amended his bankruptcy schedules to correct the error.

Other case relied on by WSCO are distinguishable. In *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F2d 414 (3rd Cir 1988), the Third Circuit applied judicial estoppel where a business debtor listed the bank which had driven him into bankruptcy as a creditor owed $7.7 million on the Chapter 11 bankruptcy schedules, failed to list the potential claims against the bank on its assets schedule, and then sued the bank. As later acknowledged by the Third Circuit in *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F3d 355, 362 (3rd Cir

1996), another Chapter 11 case, *Oneida* did not expressly analyze the debtor's intent, but found "ample evidence in the record" from which to draw an inference of deliberate manipulation. Whereas the creditors might have been entitled to the full amount of any recovery had they known about the claim in advance, the reorganization plan limited their potential recovery to only one-third of the debtor's potential recovery, and the bank may have voted differently under the plan had it known it would be sued. *Id* at 363. In contrast, Kitchen's bankruptcy was not caused by WSCO; WSCO did not take any part in the approval of the original plan and was not misled in any way; and unlike *Oneida*, a business engaging in interstate commerce, Kitchen is an unsophisticated party. Moreover, "only the plan proponent or the reorganized debtor may propose a modification of a Chapter 11 plan, leaving creditors vulnerable to late amendments," while even an unsecured creditor may propose a modification of a Chapter 13 plan. *In re Anthony*, 302 BR 843, 849-50 (Bkrtcy ND Miss 2003).

In *Burnes*, six months after filing for bankruptcy under Chapter 13, the plaintiff filed an employment discrimination suit but failed to amend his schedule to include his lawsuit. Two years later he requested that his Chapter 13 bankruptcy be converted to a Chapter 7 case, was ordered to file amended schedules and again failed to report the pending lawsuit. After he received a "no asset" complete discharge of his debts, plaintiff was confronted with a motion for summary judgment by his opponent in the employment discrimination case on the basis of judicial estoppel, and only then sought to reopen his bankruptcy to include the undisclosed claim. Unlike Kitchen, the plaintiff in *Burnes* clearly benefitted from the omission of his claim and even implicitly acknowledged that disclosing this information would have likely changed the result of his bankruptcy.

In *De Leon v. Comcar Ind., Inc.*, 321 F3d 1289, 1291 (11th Cir 2003), a Chapter 13 bankruptcy case, the Eleventh Circuit held that "judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court." The plaintiff had not amended his chapter 13 bankruptcy filing to add his lawsuit as a potential asset until after the defendant relied on this omission to file a motion to dismiss the case. Without discussing the facts, the court "infer[red] from the record [the plaintiff's] intent to make a mockery of the judicial system." *Id* at 1292 (internal quotations and citations omitted). The court based its decision on *Burnes,* involving a Chapter 7 bankruptcy, and found find the differences between Chapters 7 and 13 sufficient enough to affect the applicability of judicial estoppel "because the need for complete and *honest* disclosure exists in all types of bankruptcies." *De Leon*, 321 F3d at 1291 (emphasis added).

This court agrees that honest disclosure is required in Chapter 13 bankruptcies, but determinating whether a failure to disclose was based on an honest mistake or intentional manipulation of the court depends on the facts of each case. *De Leon* is not persuasive because it did not thoroughly discuss the facts. Furthermore, *De Leon* offered no authority for its conclusion that "a financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the amount to be discounted and repaid." *Id.* Another court discussing this conclusion in *De Leon* was not convinced that a Chapter 13 debtor-in-possession has a motive to secret assets, given that the creditors are repaid out of the debtor's income. *EEOC v. Apria Healthcare Group, Inc.*, 222 FRD 608, 613 n3 (ED Mo 2004). This court is similarly unconvinced.

A related question is whether Kitchen has derived an unfair advantage from the inconsistency.[1] "Chapter 13 allows a portion of a debtor's future earnings to be collected by a trustee and paid to creditors." *Burnes*, 291 F3d at 1284 n1. A Chapter 13 plan (which sets out the payments to creditors) may be modified even after the vast majority of plan payments have been made. 11 USC § 1329(a). The debtor, the trustee or an unsecured creditor could all propose a modification of a Chapter 13 plan. *Id.* Thus, even though the creditors were not aware of the claim against WSCO at the time the creditors' meeting took place, they can propose a modification of the payment plan. According to the Trustee's attorney, Kitchen's failure to list the claim as an asset "does not rise to prejudicial error because the claim is so speculative that the chapter 13 Trustee could not place any accurate value on the claim and so could not fill in the number in paragraph 2(f) [of the debtor's plan]." *Declaration of Jack Fisher,* p. 3. Pursuant to 11 USC § 1325(a)(4), the number in paragraph 2(f) is "the amount of money which hypothetically would be distributed to unsecured creditors if the debtors had filed a chapter 7 bankruptcy." *Id.* Since the amount could not have been determined initially, the Trustee in Kitchen's bankruptcy proceedings would have required the debtors to turn over any non-exempt funds for distribution to creditors and would have modified the Chapter 13 plan to reflect that. *Id.* However, the original plan already mandated Kitchen to "report immediately to the trustee any right of the debtor or debtor's spouse to a *distribution of funds*" and not to use these funds without the trustee's permission. Defendant's Ex. 8, p. 1. The creditors were therefore not harmed during the time the claim against WSCO was not disclosed because no distribution of

---

[1] There is no evidence that WSCO would suffer an unfair detriment if Kitchen is not estopped. In fact, because WSCO was listed as an unsecured non-priority creditor on the original schedules, it either knew or should have known about Kitchen's error, yet did nothing for more than a year before notifying Kitchen's attorney of its intention to move for summary judgment. Surely, WSCO would have acted had it felt Kitchen's omission was detrimental to it.

11 - OPINION AND ORDER

funds occurred. Had it had occurred, Kitchen would not have been allowed to use these funds without the Trustee's permission, and even unsecured creditors could have requested a modification of the plan to reflect the new funds.

Judicial estoppel is an equitable doctrine which should not be applied "where it would work an injustice." *Matter of Cassidy*, 892 F2d 637, 642 (7th Cir 1990) (citations omitted). Application of judicial estoppel is not appropriate in this case because Kitchen did not act in bad faith, has cured his error and has not derived an unfair advantage from his error. In fact, if Kitchen's claims against WSCO have any merit, allowing this case to continue may benefit Kitchen's creditors.

**ORDER**

For the reasons set forth above, defendant's Motion for Summary Judgment (docket #40) is DENIED.

DATED this 13th day of January, 2006.

s/ Janice M. Stewart_____<br>
Janice M. Stewart<br>
United States Magistrate Judge